at all. Good morning. May it please the court, my name is John Ray, and along with me is Mr. Doman, who is trial counsel. I represent appellant in this action. I'd like to reserve four minutes of my time for rebuttal. Yes. And then use the time, because this is a very fact-intensive case, but I would like for the time that we have to review the key legal points in this appeal as the issues have been very substantially addressed in the briefs. First, I'd like to address the District Court's requirement of good faith generally as an element of retaliation. And second, I'd like to address the District Court's decision dismissing the claims of discrimination on summary judgment. As to the issue of retaliation, there really are only three key facts that this Court needs to decide this issue, which is predominantly a legal issue. The District Court, fact number one, the District Court on its own instructed the jury that good faith generally was an element of a claim of retaliation for both participation and opposition activity. This is not in dispute. Fact number two, 42 U.S.C. Section 2000E3, the federal statute governing retaliation claims, does not require good faith generally. In fact, the words good faith do not appear at all in the statutory language. This is not in dispute. And third, and more important, this issue has already been decided. This Court decided exactly the issue of the element of a cause of retaliation for both participation and opposition activity under Section 2000E3. In Wyatt v. City of Boston, in interpreting Section 2000E3, this Court precluded any good faith requirement for participation-based activity. And this Court's decision in Fantini v. Salem State College rejects a general good faith requirement, instead adopting a very limited and focused good faith belief requirement that the employer's conduct violated Title VII for opposition-based retaliation. This Court may and indeed should reverse the verdict and judgment in this action, as the verdict solely rested on an improper requirement of good faith generally, of good faith conduct that has never been required in any federal court in the United States, or for that matter that I know of in the world. The District Court's jury question regarding good faith was inconsistent with Section 2000E3, it was inconsistent with Wyatt, and it was inconsistent with Fantini. Given this understanding of the law, why did Appellant proceed in the way that Appellant did a trial with respect to the jury instruction? My understanding is that instructions incorporating the good faith element, not perhaps precisely as it was ultimately instructed by the Court, but Appellant seemed to understand that good faith was an issue for the jury to address, both with respect to opposition and participation. And that's a good question, Judge Lopez, because it's an issue raised by appellees, and I want to make sure that the factual record is clear. And in that regard, the Appellant, at summary judgment, objected to any good faith requirement, and the District Court essentially found in its favor. In opposition to Defendant's motions in Limine, where the District Court explicitly held in its electronic order, and I'm quoting here from the record at Appellant's appendix, page 32, quote, and this is the holding of the District Court, plaintiff is correct that good faith is not an element of retaliation claim premised on participation activity. There are two issues. On the first day of trial, the District Court reversed itself at the last minute, telling the parties it was going to require good faith for both participation and for opposition activity. The District Court was clear on that issue. It later on the second day of trial reiterated that in fact it was going to reverse itself and require, and indeed send to the jury questions on good faith for both participation and for opposition activity. So in the jury instruction, after the questions were presented to the parties, what Appellant did below was attempted to say, there are, as a matter of law, the issue of whether conduct amounts to protected activity is a legal determination. And for the court to find that there's protected activity, it had in the first instance to make a determination about good faith, that in fact protected activity is activity engaged in in good faith. And so the court in the first instance already made the determination. Indeed, it said on the record that plaintiff's protest and opposition activity was per se reasonable. I think that's an important point. It said per se reasonable, but nonetheless presented the question to the jury again. What Appellant did below was to try to mitigate the court's determination that it was going to require good faith generally and not, as Fantini required, a good faith reasonable belief. Appellant did proceed in the lower court on the issue, on the concession that Fantini does require in its holding, a good faith reasonable belief. But again, the issue was the district court did not follow Fantini and required, rather than a good faith reasonable belief, good faith activity. It was something that the district court said in its instruction. It was what counsel for appellees stated in their opening and in their closing. You have engaged in good faith activity, not, as this court clearly has said in Fantini, had a good faith reasonable belief. And that was the error in this case. What appellees have done is to argue in the first instance, as the court has addressed, that plaintiffs asked for this extra burden. After prevailing on summary judgment, after putting an extra burden on me, giving me an extra element to prove, which we didn't. The record in that regard is clear. Appellees also respond that the court should disregard Congress, disregard the statutory language of Section 2E3, and make a special general and free-floating good faith requirement as an element of retaliation. This we understand to be a policy-based argument, that employers need some protection. Our view in that regard is employers are protected. And in fact, it's Rule 11. In any case, in every case, whether it's contract, whether it's negligence, whether it's Title VII, an employee and his or her attorney has to come into court with a good faith basis for the complaint. Has to go into the ECOC with a good faith basis. Why not? If you go to the EEOC and you make false statements, you are subject to 18 U.S.C. 1001, the false statement statute. You are subject to a crime if you go to the EEOC and you make false statements. And in this instance, Rule 11 broadly protects employers. It's a rule that has been confirmed by Congress. It is a rule adopted by the Supreme Court as what is sufficient to protect all defendants. And in the absence of any statutory language in Section 2000E3 to the contrary, Rule 11 is sufficient. And in this case, they're synonymous effectively, asking for a good faith basis, a good faith reasonable belief. And it's interesting because both Wyatt and Fantini are decisions that were decided at the 12B6 stage. If there is an issue of a lack of good faith belief, if an employee has brought a claim maliciously, if an employee has brought a frivolous claim, that claim is dismissed in the first instance, either on 12B6 or pursuant to Rule 11, and there are sanctions issued, you don't have a bad faith claim that proceeds to discovery, that proceeds through summary judgment, and that ultimately goes to trial that was filed in bad faith. There is no policy reason to depart from Section 2000E3's language. There is no policy reason to depart from Wyatt or to depart from Fantini. And under those standards, it was clear that the district court's jury question did not meet those standards. Unless the court has any questions, I'd like to turn to the issue of discrimination. The district court's decision on summary judgment on the discrimination claims is bottomed on what essentially is a pretext plus requirement. A standard this court has explained is not what is required under McDonnell-Douglas and its progeny in order to show pretext. The district court expressly held in its opinion that while plaintiff had established that ropes applied its partnership criterion unevenly between whites and plaintiff who is black, that somehow that is not a showing of discriminatory animus, that it wasn't enough. But it's always been enough. It's this court in Thomas v. Eastman Kodak addressing McDonnell-Douglas v. Green, which has been the law for over 40 years, rejected exactly this position, the position taken by the district court, that the employees are required to show more than pretext to be based on race. As in Thomson v. Eastman Kodak, while plaintiff uses... Excuse me, Counselor. Are you saying that if the pretext is shown that it follows from that, that the prescribed discriminatory animus follows? No, not as a necessary following. But what I am saying is that that is sufficient. It is sufficient in two ways, as this court has held in Thomas v. Eastman Kodak, that an employee challenge the race neutrality of the proffered reasons, holding that if an employer evaluates employees of one race less favorably than employees of another race who have performed equivalently, and if race, rather than some other factor, is the basis for the difference in valuations, then the disenfavored employees have been subject to discrimination because of race. It is sufficient to show, under two methods, one pretext, as Thomas said, a truth versus lies. If you show, in fact, that there was evaluations, and in fact, the employer didn't believe the reasons that it proffered, but you can also show it under Thomas in another way, which is by showing that the standard that was applied was applied unevenly and unfairly between two similarly situated individuals because of race. And that's the allegation in this case, both that, and I understand that I'm limited here in terms of time, but I want to summarize, both, as was shown in this case, pretext, which was sufficient under McDonnell-Douglas to warrant an inference of discrimination and discriminatory animus, sufficient to go to the jury, two, that unequal treatment under McDonnell-Douglas, under Thomas versus Eastman-Kodak, is sufficient to show discriminatory animus. And so I see I want to reserve the remainder of my time, unless the court has a question. Why don't you hold on a second, counsel? I'm sorry. Take a minute and wrap up if you want. Okay. And I was going to say, essentially, below, on summary judgment, Appellant established both, that the reasons presented by the employer were not truly believed by the policy committee. In fact, it was clear that the policy committee had evidence that the reasons were not true, the evaluations were not true, were not reflected based upon what was presented to the policy committee. And two, that this was a policy committee that did, in fact, apply uneven standards of race and, in fact, was conscious to race and used it as a quid pro quo for Appellant, as a black associate, that they would move forward if they accepted being pigeonholed for race-based assignments. That's sufficient to show pretext under both McDonnell-Douglas, Thomas versus Eastman-Kodak in this court. But I will reserve the remainder of argument in rebuttal. Thank you. Good afternoon, ladies and gentlemen. My name is Michael Keating, and together with Lisa Arrowood, we represent the appellees in this matter. If we can pass for a moment the issue of waiver on the good faith issue, and I want to return to that, I would like to suggest that what Mr. Ray is seeking from this court is the right to invoke the protections of Title VII, to invoke the protections that Title VII gives to an employee without proving that those protections are invoked in good faith. The jury below found that both in the opposition and participation context, Mr. Ray had not first filed his complaint with the EEOC in good faith, and second, had not written the letter to Harvard Law School in good faith. There was ample evidence in the record to support that conclusion. The record shows in this case an attempt by Mr. Ray to use the protections that Title VII provides as a tactical weapon to extort from his employer an inordinate and undeserved amount of money, and a recommendation from the employer to be an assistant United States attorney when the employer, in his belief, did not believe Mr. Ray showed the character to have that position of such responsibility. Counsel, with respect to participation, what's wrong with that rule? What if there's a filing in bad faith that turns out to be a valid filing? Well I think the rule is Where the statute doesn't say anything about The statute language is silent, frankly, and so is the legislative history on this matter. So wouldn't the easier rule simply to be that there is complete protection? I think not, Your Honor. I think if you have complete protection, I think the Eighth Circuit dealt with this in the Matson case. What you risk, and frankly I think this case is a good illustration of it, you risk someone invoking Title VII, say in the participation sense, in order to achieve an objective that has nothing to do with his claim of underlying discrimination. And that's why I think in either the opposition sense, which I think it is, as Mr. Ray said, I think settled, but also in the participation sense that having a requirement that the employee have a good faith belief that his rights have been violated is important to establish the fact that he's entitled to the protections that Title VII provides against retaliation. So I don't see any policy reason, with all due respect, why you would distinguish between the opposition situation and the participation situation. I can think of strong policies. Well, try the one that I suggested. The complaint is filed with the EEOC in bad faith, and the person thinks that the claim is absolutely frivolous but is trying to accomplish something else, but it turns out that they're wrong. It's a valid claim. We don't have that situation here, but I don't know why we would have to resort to the time that we proved that the allegation, in fact, was more valid than the appellant or the employee thought it was. I mean, the loss would seem to be such that you would require an appellant or an employee, rather, to have a good faith belief that when he seeks to invoke the protections of Title VII, and that's what we have here, a protection against certain conduct by the employer against that employee, that he have a good faith belief that his rights have been violated. And I don't know why the situation in the participation area would be treated any differently than it would in the opposition area. And I think there's a balancing test between the rights of the employee to be free from retaliation for asserting legitimate, in his mind legitimate, claims of discrimination and the employer's right not to have his or her hands tied because the employee has foisted a claim of discrimination as a guise to achieve other motives. So I don't frankly think the fact that it could down the road be shown to be valid is a reason not to require it at the outset. I don't think there's any cases, by the way, that would suggest that. And contrary to what my brother has said, the case law in this area in this circuit is there's not been any holding in this circuit that says that good faith is not a requirement in the participation area. There have been holdings in other circuits that say that and we cite them in our brief. Wyatt is not good authority for this proposition. It's dictum in Wyatt. Hockstead actually goes the other way than Wyatt in this district. It's also frankly dictum in that case. So there really hasn't been a holding in this district or this circuit on whether or not you must or must not have a good faith requirement in participation. I would say, however, and this is really the most important aspect of my argument, there's been a total waiver of this position by the appellant in the trial court. What happened in the trial court was the judge who had initially indicated that he would not charge the jury on good faith in participation context said before the jury was in panel the first day of the trial, he said, I've looked at this since. That was done the first day of the trial. No objection at that time was advanced by Mr. Ray's counsel. The next day Mr. Ray's counsel said, well, you know what, I object to that. The judge had given a pre-trial charge to the jury. On the sixth day of the trial, and this is critical, on the sixth day of the trial, Judge Stearns gave the lawyers his proposed jury instructions and under rule 51 directed counsel to comment on those instructions. The next day, Mr. Ray's counsel did comment on those instructions and on some of the instructions he objected. The proposed instructions included good faith on both participation and opposition. Mr. Ray's counsel stated, and this is the appendix 68, in his request to the court, he said, I would like you to instruct the following. I instruct you that filing a charge of discrimination in good faith with the EEOC and writing letters of protest in good faith to anyone, including a newspaper reporter, constitutes a protected activity. The judge specifically asked for that and if you look at the judge's instructions, which are part of the record at 104 and 105, the judge gave substantially the instruction that Mr. Ray's counsel asked him to give. After the judge gave those instructions, he asked the counsel to come to sidebar. At that point, Mr. Ray's counsel said affirmatively, I have no objection to your instructions. Under rule 51, that is a waiver. There is no way under rule 51 that you can raise an issue in this court if the plaintiffs, if the appellant in this instance had in fact requested the instructions that the judge gave and then after the instructions were given, said affirmatively that he had no objection to the instructions. United States law which we cite in our papers says as much, even though it doesn't come in even under plain error under rule 51. So what about the, if I understand the situation correctly, the judge also instructed on a reasonable belief. That was with regard to opposition. Right. Which is part of what the Fantini and other cases in this circuit say you should instruct on and I don't think the plaintiff is raising a problem with that. His problem is with the instruction on participation which I suggest to the court and I think it is manifest on this record, was specifically asked for by Mr. Ray's counsel and when it was given in the form it was asked for, the counsel indicated he had no objections to the instruction as circumstances permit an appellant to raise the propriety of that instruction to an appellate court and as I say Wallace to the other, I think is a holding which would say you can't. I would also say just as a practical matter, to permit this to happen and then to flip his position here would put the district court judge in an impossible situation because the district court judge is unable to know when or if the parties have objections to the instructions. So I think it is a clear waiver. I don't think there is any way around it. I think there is an insurmountable hurdle and there is no case law that I am aware of which would permit that issue to come before the court and as I say even under plain error, if there was such a way to get this under plain error, certainly the error here is neither plain nor is it error. So I don't think it satisfies rule 51 requirements in that regard. Let me turn if I might to the summary judgment issue unless there are more questions on the first point. Judge Stearns had the opportunity to review exhibits, deposition transcripts, documents that had been exchanged between the parties and he was examining those materials on the summary judgment motion to determine whether or not there was any way a reasonable fact finder could determine that Ropes' asserted reason for terminating Mr. Ray was pretextual. He found, and this is I don't think disputed, that the decision making body at Ropes & Gray is the policy committee. They are the only small group of lawyers there. They make the decision on partnership. No one else does. But the policy committee considers written evaluations of candidates for partnership that are submitted by the partners about candidates. The judge had those available to him. He also had the testimony by affidavit and otherwise and depositions of Ropes' partners. Mr. Ray took I think 14 depositions of Ropes' partner. On that record and looking at that record, Judge Stearns carefully examined whether or not there was any evidence in that record that could suggest to a reasonable fact finder that the policy committee's decision was pretextual and based on racial animus. That was precisely the question he considered. He went through all the evidence and you would note that as you read his opinion. And it was his conclusion that there was no evidence which would tie anything that had happened that Mr. Ray claimed had happened to the policy committee. There was no way to connect the dots between, for instance, an isolated incidence that Mr. Ray asserted might have happened to him at the firm, which as the record shows was denied by the persons who he claimed did it. But leaving aside that, nothing that he asserted would get to the policy committee. So this court and frankly judges with all due respect on this panel have had to wrestle with this same issue in a summary judgment context. So when you look at the evidence, I suppose the first step is, is there anything in the evidence which suggests racial animus in that decision? Well, there is certainly nothing in the record that was presented that would explicitly suggest that. In fact, if anything, the performance reviews of Mr. Ray were quite negative and suggested ample support for the termination decision on the merits. So then your honors have looked at this. Is there anything in the evidence presented that's unworthy of credence, I think is a phrase that has been used from the Hodgson case, or would suggest that somehow there's been some lack of credibility amongst the people who testified, inconsistencies in the testimony. Looking at this, so people would say, well, why would they say this about this and why would they say that about that, to raise perhaps some issue of pretext or some issue that would be relevant here. Judge Stearns found none of that, none of that in this case. So he was faced with a decision which he made, which is to decide that there was no credible evidence upon which a reasonable fact finder could infer that the decision to terminate Mr. Ray was pretextual and was based on racial animus. Mr. Ray, in his brief, talks about certain information he furnished to Doug Stearns. How many African Americans have been proposed to partner at Ropes and Gray? Have they preferred to other people for partnership? But the bottom line was on each of these, and Judge Stearns treats each of them, there was not sufficient comparability to Mr. Ray. Mr. Ray did not advance arguments regarding these instances in a form which would have persuaded a fact finder or even permitted a fact finder to make a conclusion that those incidents had any bearing on the decision of the firm to terminate Mr. Ray. So if you look at this court, and you review it in the light that this court has previously articulated, as recently, frankly, as September of this year, of what you have to find in a record in order to permit the matter to go to a jury on a discrimination claim, there was nothing in this record that would permit a court to permit this issue to go to the jury because there was no basis on which a jury could find pretext or racial animus. Thank you very much. I'd like to be very brief and respond to several points raised by appellees. First, as to the issue of waiver, under Rule 51, a failure to object after the court's instruction is not a waiver. In fact, it's a forfeiture, and there's a substantial difference. The cases in this court are absolutely clear that a waiver is not a waiver. In fact, you can review for plain error. And I'll cite the case to you that we cited in the brief to make sure that the court has it. It is also an admission in an appellee's brief that, in fact, it can be reviewed for plain error. So it seems pretty clear that, in fact, appellees do know that there is a standard of plain error that can be reviewed in this case for an instruction that was improper, even if it was not objected to at trial. That's Rivera-Castillo v. Otokiri, 379 Fed 3rd 4 at 13. That's on page 8 of appellant's brief. And more so, and I think that the briefs, particularly the reply brief, address this very specifically, the record was clear that counsel for appellant objected at least three times at trial to a good faith instruction, both on the first day when the court overruled itself, on the second day yet again as the court offers additional reasons for reversing itself. And not only that, but in its proposed jury question and instruction, I would encourage the court to look at the record on these points. The jury questions presented by appellant's counsel did not contain any mention of good faith. None. The court added that issue, consistent with what it had said repeatedly, and in its efforts to clarify the issue, yes, appellant's counsel did say, I'd like to make sure that it's clarified that when the court has already determined that this is protected activity, as it did, the jury should be instructed, it made that determination, and part of its determination was already good faith. That does not transform that into a waiver. It wasn't. We were clear on that point. Two, there is an objection to the instruction under Fantini, and I want to make sure that the court was clear. The objection is Fantini required a very limited and very specific inquiry as a reasonable good faith belief that the employer's conduct violated Title VII. And in this case, the employee's belief was based on an EEOC determination that, in fact, Ropes and Gray had retaliated. There is no basis to suggest that an employee with an EEOC decision in hand that says the employer has violated Title VII could somehow unreasonably believe that the EEOC, the expert, was wrong. There's no evidence to suggest under Fantini that plaintiff in this case disbelieved the EEOC, and further, in addition to the EEOC's determination that Ropes and Gray retaliated and violated the law, the underlying basis of the second claim of retaliation, there was an admission by Randall Bodner in an email that said, I'm retaliating against you. I'm not going to provide you these letters of recommendation because you filed a complaint of discrimination with the EEOC. Armed with an admission from Mr. Bodner and an EEOC determination that said Ropes and Gray violated the law, there is no basis under which any jury could have believed that there was a lack of a good faith belief. The issue is, under Fantini, that is not what the court instructed. It said good faith activity, which was a searching inquiry as to any reason the jury may want not to find on the issue of retaliation, and that was the problem. And third, if Mr. Keating or any party in this proceeding believed that there was an improper motive, that there was a tactical weapon, that there was inappropriate and an improper basis for the conduct of a plaintiff who is an attorney before this bar here in the First Circuit, here in the district court, the issue is not to raise that to the jury. We should pause. In fact, you should pause today if you believe that plaintiffs lacked a good faith basis and say, wait a minute, that's not the conduct of attorneys in this case or in our courtroom. And in fact, let's pause. Mr. Doman filed a complaint and argued these issues. If there's a lack of a basis here, we should take serious pause. This isn't hyperbole. This is serious. And I'm going to tell you, frankly, being in the position of not only being counsel to appellant on the appeal, but also appellant and plaintiff in this case, I will say to you very clearly, I had a good faith, reasonable belief, I still have one, that Ropes and Gray violated the law, and I will stay here as long as this court needs if it would like to question me in that regard. On the last issue of discrimination, I'd only say that the issue is, under Thomas v. Eastman's Code Act, very clear that unequal treatment of similarly situated individuals is, in fact, evidence of pretext and discrimination, racial animus unto the law. Thank you.